## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 12-61670-CIV-ROSENBAUM

GUARANTEE INSURANCE COMPANY,
PATRIOT NATIONAL INSURANCE GROUP,
and PATRIOT UNDERWRITERS, INC.,

      Plaintiffs,

vs.

BRAND MANAGEMENT SERVICE, INC., and
HERSHEL WEBER,

      Defendants.

_____/

### ORDER GRANTING PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT

This matter is before the Court upon Plaintiffs' Motion for Partial Summary Judgment on the Contract and Foreclose of Security Interest Counts [ECF No. 105] and Plaintiffs' Motion for Summary Judgment on Defendants' Amended Counterclaim [ECF No. 171]. The Court has reviewed the parties' briefs and statements of material facts and the evidence on the record and is otherwise fully informed in this matter. For the reasons set forth below, the Court grants Plaintiffs' Motion for Partial Summary Judgment.

### I. MATERIAL FACTS

Plaintiff Patriot Underwriters, Inc., is a producer of worker's compensation insurance business, and Plaintiff Guarantee Insurance Company is a mono-line carrier that writes worker's compensation insurance. ECF No. 106 at ¶ 1. Plaintiff Patriot National Insurance Group ("Patriot") is the holding company and ultimate parent for both entities. *Id.*

Defendant Brand Management Service, Inc., is a professional employer organization that provides worker's compensation insurance to other companies.  ECF No. 121 at ¶ 2.  Defendant Hershel Weber is Brand's president and sole shareholder.  ECF No. 106 at ¶ 2.

In September 2009, Patriot and Brand entered into a Worker's Compensation and Employers Liability Insurance Program Agreement for the period of September 30, 2009, to September 30, 2010.  *Id.* at ¶ 4.  The parties thereafter entered into agreements in September 2010 and September 2011.  *Id.* at ¶ 5.  Pursuant to the insurance policies, Brand was required to pay monthly premiums and make monthly payments for losses and expenses incurred up to the policies' one-million-dollar deductible.  *Id.* at ¶ 6-7.  Brand was obligated under the policies to make those payments within thirty days of receiving the monthly invoices.  *Id.* at ¶ 8.

According to the policies, default occurs when the insured, or any of its subsidiaries or affiliates, fails to perform any obligation under the agreement within fifteen days after its due date.  *See* ECF No. 106-4 at ¶ 8.  Upon default, the policies provide that Patriot may, among other things, declare the entire unpaid amount of any payment obligation immediately due and payable.  *Id.* at ¶ 8(c).  The agreements further permit Patriot to satisfy the obligations owed by Brand through set-off against any security, collateral, or property of Brand received by, pledged to, held by, or otherwise available to Patriot in connection with the payment obligations.  *Id.* at ¶ 8(e).

During the policy period, Defendants made several late payments.  ECF No. 121 at ¶ 12.  Although Plaintiffs accepted some untimely payments, Defendants' refusal to pay caused Plaintiffs to terminate the policies on several occasions.  ECF No. 106 at ¶ 12.  Plaintiffs twice agreed to reinstate the policies after Defendants executed promissory notes, guaranty agreements, and security agreements.  *Id.* at ¶ 13.  Specifically, Defendants executed two promissory notes on January 20,

2012, and February 17, 2012, for the principal sums of $445,000 and $1.8 million, respectively. *Id.* at ¶ 14. Each promissory note was accompanied by a security agreement, which secured the note, and a guaranty agreement, in which Weber guaranteed and became the surety to Guarantee for payment of the sums due under the notes. *Id.* at ¶ 16, 18.

On February 17, 2012, the parties also entered into an Addendum to the Program Agreement, wherein Brand agreed to make the following payments: (1) monthly premium payments of $130,098 beginning March 14, 2012, and concluding September 15, 2012; (2) monthly assessment payments of $87,323 beginning March 14, 2012, and concluding September 15, 2012; (3) continued payment of the claim deductible reimbursement amounts contained in the invoices sent to Brand by Patriot under the terms of the policies; (4) continued satisfaction of the payment obligations set forth in the January, 20, 2012, promissory note; and (5) monthly payments of $50,000 for thirty-six months—through March 15, 2015—to bring current and satisfy all past, outstanding and unpaid payments. *Id.* at ¶ 20.

Although the parties disagree as to the reason, it is undisputed that Defendants stopped payment on two checks in July 2012 and ceased making payments to Plaintiffs. The policies were subsequently canceled on August 4, 2012. *Id.* at ¶26. Plaintiffs aver that Defendants canceled the policies because Defendants simply did not want to pay anymore. For their part, Defendants contend that they stopped payment because Plaintiffs failed to provide them with an accounting of the collateral in Plaintiffs' possession. Plaintiffs allege that Defendants owe a total of $5,985,714,92, which includes premium assessments, deductibles, and the amounts due under both promissory notes. *Id.* at ¶ 29.

On August 24, 2012, Plaintiffs brought the present action against Defendants, asserting various causes of action.  In their motion, Plaintiffs seek entry of summary judgment on four counts in their Complaint—breach of contract (Count I), breach of promissory notes (Count III), breach of guaranty agreements (Count IV), and foreclosure of security interest (Count VIII).  Plaintiffs have also moved for summary judgment on Defendants' Amended Counterclaim.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party."  *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).  A fact is material if it "might affect the outcome of the suit under the governing law."  *Id.* (quoting *Anderson*, 477 U.S. at 247-48).

On a motion for summary judgment, the Court views the evidence, including all reasonable inferences drawn from it, in the light most favorable to the non-moving party and resolves all reasonable doubts against the movant.  *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1274 (11th Cir. 2008); *Johnson v. City of Mobile*, 321 F. App'x 826, 830 (11th Cir. 2009).  The Court does not weigh conflicting evidence.  *Skop v. City of Atlanta*, 485 F.3d 1130, 1140 (11th Cir. 2007), *reh'g and reh'g en banc denied*, 254 F. App'x 803 (11th Cir. 2007).  Nor does the Court determine the credibility of witnesses.  *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012) (citation omitted).  Upon discovering a genuine material dispute, the Court must deny summary judgment and proceed to trial.  *Id.* at 1292.

-4-

The moving party shoulders the initial burden of showing the absence of a genuine issue of material fact. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). Once the moving party satisfies this burden, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., LLC.*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Accordingly, the non-moving party must produce evidence, going beyond the pleadings, and by his own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts suggesting that a reasonable jury could find in his favor. *Shiver*, 549 F.3d at 1343.

Local Rule 56.1, S.D. Fla., further factors into this Court's consideration of a motion for summary judgment. Under Local Rule 56.1, a party moving or opposing summary judgment must submit a "statement of the material facts as to which it is contended that there does not exist a genuine issue to be tried or there does exist a genuine issue to be tried, respectively." S.D. Fla. L.R. 56.1(a). The rules require these statements be supported by "specific references" to evidence on the record. S.D. Fla. L.R. 56.1(a)(2). The Local Rules expressly caution, "All material facts set forth in the movant's statement filed and supported as required above will be *deemed admitted* unless controverted by the opposing party's statement, provided that the Court finds that the movant's statement is supported by evidence in the record." S.D. Fla. L.R. 56.1(b) (emphasis added). But even where an opposing party neglects to submit any alleged material facts in controversy, the court must still satisfy itself that the evidence on the record supports the uncontroverted material facts that

the movant has proposed.  *Reese v. Herbert*, 527 F.3d 1253, 1268-69, 1272 (11th Cir. 2008); *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1103 n.6 (11th Cir. 2004).

## III. DISCUSSION

### A. Breach of Contract, Promissory Notes, and Guaranty Agreements (Counts I, III, and IV of the Complaint)

Counts I, III, and IV of Plaintiffs' Complaint all arise from Defendants' alleged breach of the parties' agreements.  Specifically, Plaintiffs claim that Defendants breached their obligations by refusing to pay.

To state a claim for breach of contract, a party must show (1) a valid contract**;** (2) a material breach, and (3) damages.  *Beck v. Lazard Freres & Co.*, 175 F.3d 913, 914 (11th Cir. 1999) (citing *Abruzzo v. Haller*, 603 So. 2d 1338, 1340 (Fla. 1st DCA 1992)).[1]  The contracts at issue here are the insurance policies, the promissory notes, and the guaranty agreements, all of which were executed and signed by the parties.  There is no dispute as to the contracts' validity.  Plaintiffs have further established material breach of the agreements and damages by virtue of Defendants' non-payment, as Defendants do not contest having ceased payment under the agreements in July 2012.  As a result, Plaintiffs maintain that they are entitled to summary judgment on their breach-of-contract claims**.**

Defendants oppose Plaintiffs' Motion by asserting several defenses to Plaintiffs' claims.  In support of their position, Defendants raise the following arguments: (1) the agreements at issue are unenforceable because they were procured by fraud or coercion, (2) Plaintiffs breached the contracts

---

[1]  The Addendum to the Program Agreement provides that the contract is "governed exclusively by the laws of the State of Florida."  *See* ECF No. 106-7 at 4.  Because of this contractual choice-of-law provision, which neither party contends is inoperative, the Court has applied Florida state law in the resolution of Plaintiffs' Motion.

first by failing to provide Defendants with deductible reimbursement invoices, and (3) Plaintiffs have not proven damages.  The Court addresses these arguments in turn.

### 1. Fraud/Coercion

Defendants first contend that the agreements are unenforceable because Plaintiffs "forced and/or coerced" Defendants to sign the documents through fraudulent or other unlawful means.  *See* ECF No. 86 at ¶ 121, ECF No. 122 at 10.  "A party can successfully defend against liability on a claim by showing that he was fraudulently induced to enter into the contract or transaction upon which such liability is asserted."  *Poneleit v. Reksmad*, 346 So. 2d 615, 616 (Fla. 2d DCA 1977).  In Florida, where fraud is invoked as a defense to a contract, "all essential elements of the fraudulent conduct" must be met.  *George Hunt, Inc. v. Wash-Bowl, Inc.*, 348 So. 2d 910, 912-13 (Fla. 2d DCA 1977).  The burden of proving each element of an affirmative defense falls on the party that asserts the defense.  *Paladin Shipping Co. v. Star Capital Fund, LLC*, 491 F. App'x 42, 44 (11th Cir. 2012) (quoting *Custer Med. Ctr. v. U.S. Auto. Ins. Co.*, 62 So. 3d 1086, 1097 (Fla. 2010)).  When a party who bears the burden of proof at trial fails to sufficiently establish an integral element of that party's case, summary judgment is appropriate.  *Thorsteinsson v. M/V Drangur*, 891 F.2d 1547, 1550 (11th Cir. 1990) (citing *Celotex*, 477 U.S. at 322-23)).

Defendants first allege that they were fraudulently induced to enter into the contracts because Plaintiffs deceived them about the collateral underlying the insurance program and concerning the nature of Defendants' payment obligations under the policies.  Fraud in the inducement occurs "where one party's ability to negotiate and make informed decisions as to the contract is undermined by the other party's pre-contractual fraudulent behavior."  *Bradley Factor, Inc. v. United States*, 86 F. Supp. 2d 1140, 1145 (M.D. Fla. 2000) (citing *Hotels of Key Largo, Inc. v. RHI Hotels, Inc.*, 694

So. 2d 74, 77 (Fla. 3d DCA 1997)).   Fraud in the inducement requires proof that (1) Plaintiffs misrepresented a material fact, (2) Plaintiffs knew or should have known that the statement was false, (3) Plaintiffs intended that the representation would induce Defendants to enter into the contract, and (4) Defendants were injured by acting in justifiable reliance on the misrepresentation. *See Barnes v. Burger King Corp.*, 932 F. Supp. 1420, 1425 (S.D. Fla. 1996) (citations omitted).

According to Defendants, the agreements were procured by fraud because Plaintiffs allegedly misled Defendants as to the status of the collateral.   Defendants aver that Plaintiffs misrepresented to them that the insurance program was under-collateralized, thus inducing Defendants to execute the promissory notes and guaranty agreements.   *See* ECF No. 122 at 11.   Despite this allegation, nothing in the record supports Defendants' contention that they were misled as to the status of the collateral in Plaintiffs' possession.

Nor do Defendants set forth any argument or evidence bolstering their position that the program was not under-collateralized.   The only contention Defendants raise with respect to the collateral is Plaintiffs' alleged failure to provide Defendants with an accounting.   This, without more, does not equate to fraud.   Plaintiffs' mere assertion that they were deceived, without some modicum of evidence, is insufficient to withstand summary judgment.

Indeed, contrary to Defendants' allegations, the evidence seems to support Plaintiffs' position that the program was under-collateralized.   Plaintiffs claim that they are owed over five million dollars, well in excess of the approximately $ 2.7 million that they purportedly hold as collateral. Moreover, Tzivia Roth, a secretary for Brand, noted in her affidavit that Gary Roche, Guarantee's Vice President of Operations, sent her an email stating that as of December 2011, Guarantee had $1.8 million in open-claim reserves but only a total of $1.3 million in collateral and was thus

"severely under-collateralized." ECF No. 121-10 at 33. Defendants' blanket assertion that Plaintiffs misrepresented this fact is unsupported by the evidence before the Court and is insufficient to create a material issue of fact for trial. *See Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) ("A mere 'scintilla' of evidence supporting the [nonmoving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party" (quoting *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990)).

In Count III of the Amended Counterclaim, Defendants also allege that Plaintiffs fraudulently induced them to enter into the agreements by falsely representing to them that the notes, security agreements, and guaranty agreements were not intended to secure any new or different liabilities. According to Defendants, Plaintiffs, through their authorized representatives, told Defendants that the additional agreements were intended to serve solely as additional collateral for the payment of the monies owed.

It is not clear, however, how this alleged statement constitutes a misrepresentation, nor is there any evidence that Defendants were somehow deceived. Plaintiffs expressly aver that they executed the promissory notes because Defendants' payments under the policy were in arrears, and the program lacked sufficient collateral to cover existing claims. *See* ECF No. 106 at ¶¶ 13 ("Patriot then reinstated the Policies but only after Defendants executed Promissory Notes, Guaranty Agreements, and Security Agreements promising to pay the monies owed, to bring all accounts current, and to secure the loan payments due on deductible installments, collateral installments, and premium payments."). Thus, a representation that the agreements were intended to secure existing payment obligations is not inaccurate.

Moreover, even if Plaintiffs' purported statements were false, Defendants' contention that they relied on this representation in signing the agreements is wholly contradicted by Mr. Weber's deposition.  During his deposition, Mr. Weber denied owing Plaintiffs any money at the time that the note was executed, stating that he was up to date on "all the claims" and that the January 2012 promissory note was security "for the future."  ECF No. 107-2 at 171-72.  Mr. Weber's assertion that the note was to secure future payment controverts Defendants' current allegations that they detrimentally relied on Plaintiffs' alleged assurances that the note secured only existing payment obligations.

Defendants' allegations are further contradicted by the express terms of the parties' agreements.  Significantly, the February 17, 2012, Addendum to the Program Agreement contains a merger and integration clause, which states, in relevant part,

> This Agreement shall be binding upon the parties hereto and their respective successors.  This Agreement represents the complete understanding and entire agreement between the parties relating to the subject matter herein.  This Addendum, solely on the Payment Obligations contained here, *fully supersedes any and all prior agreements between the Parties, whether oral or in writing.  No other promises or agreements shall be binding or shall modify this Assignment unless in writing and signed by the Parties*.

ECF No. 106-7 at 4 (emphasis added).  And although a party may introduce oral representations to prove that a contract was procured by fraud notwithstanding a merger clause, *Nobles v. Citizens Mortg. Corp.*, 479 So. 2d 822, 822 (Fla. 2d DCA 1985), "it is a basic tenet of contract law that reliance on representations by a contracting party in a suit based on the contract is unreasonable where the representations are not contained in the subsequent written agreement between the

parties," *Barnes v. Burger King Corp.*, 932 F. Supp. 1420, 1428 (S.D. Fla. 1996). *See also SEB S.A. v. Sunbeam Corp.*, 148 F. App'x 774. 798 (11th Cir. 2005).

Here, Plaintiffs' alleged statements are nowhere incorporated into the contracts at issue. And regardless of Plaintiffs' purported representations as to the nature of Defendants' payment obligations, the agreements precisely delineate Defendants' monetary liability.[2] Defendants cannot

---

[2] The Addendum summarizes Defendants' payment obligations as follows:
1. Brand shall make the following payments which shall be referred to herein, collectively, as Payment Obligations:

| | |
|---|---|
| a | Monthly premium payments of one hundred thirty thousand ninety-eight dollars ($130,098) beginning on March 15, 2012 and concluding with the final monthly payment due on September 15, 2012; |
| b | Monthly assessment payments of eighty-seven thousand three hundred twenty-eight ($87,328) beginning on March 15, 2012 and concluding with the final monthly payment due on September 15, 2012; |
| c | Brand shall continue to pay the actual claim deductible reimbursement amounts as contained in the invoice(s) sent to Brand by Patriot pursuant and otherwise subject to the terms and conditions of the Program Agreement; |
| d | Brand shall continue satisfying its payments obligations as set forth and as required under the Commercial Promissory Note in the amount of four hundred forty-five thousand dollars ($445,000) dated January 20, 2012 . . . ; |
| e | Brand shall bring current and satisfy all past, outstanding, and unpaid payments due by Brand to Patriot by making a monthly payment of fifty thousand dollars ($50,000) each month for thirty six (36) months with the first payment due on March 15, 2012 and shall conclude with the final payment March 15, 2015. |

ECF No. 106-8 at 1-2.

claim that they were fraudulently induced to enter into the contracts when the language of the agreements refutes the notion that Defendants were somehow misled.

Finally, in Count II of the Amended Counterclaim, Defendants aver that they were coerced into entering the agreements because New York law requires that they carry worker's compensation insurance. According to Defendants, after the policy was canceled due to non-payment, Plaintiffs refused to reinstate the policy until Defendants executed the promissory note and security and guaranty agreements. Defendants claim that they had no other choice but to sign because if they had let the policy lapse, they would have been in violation of state law and would have been unable to carry on their business.

Although the Court understands Defendants' predicament, this is not tantamount to coercion or duress. In order to establish legal duress, "the act of the party compelling the unwillful obedience of another must be unlawful or wrongful." *Corporacion Peruana de Aeropuertos y Aviacion Comercial v. Boy*, 180 So. 2d 503, 505 (Fla. 3d DCA 1965). "It is not improper and therefore not duress to threaten what one has a legal right to do." *Peralta v. Peralta Food Corp.*, 506 F. Supp. 2d 1274, 1280 (S.D. Fla. 2007) (quoting *City of Miami v. Kory*, 394 So. 2d 494, 498 (Fla. 1st DCA 1981)).

Here, the undisputed facts indicate that Plaintiffs canceled the insurance policy as a result of Defendants' refusal to timely pay the monies owed. Under the program agreement, a failure to perform any obligation within fifteen days of its due date constitutes a default, and upon default, Patriot was permitted to cancel all un-expired policies. *See* ECF No. 106-3 at 9. Thus, Plaintiffs were within their right under the parties' agreement to cancel the policy due to untimely payment, and the mere fact that Plaintiffs requested additional security as a condition to reinstating the

program does not amount to coercion or duress.  That Defendants needed insurance to comport with state law does not implicate Plaintiffs in any wrongdoing.  Defendants may have been in a bind, but that alone is insufficient to invalidate the agreements.  *See, e.g.*, *Spillers v. Five Points Guaranty Bank*, 335 So. 2d 851 (Fla. 1st DCA 1976) (holding that a bank's alleged threats to enforce its existing rights under a security agreement, with the result that borrowers would be out of business, did not constitute duress that would render the renewal note void or voidable).  Moreover, the fact that Defendants obtained replacement worker's compensation insurance immediately after the July 2012 cancellation belies the notion that they were without recourse to seek alternative coverage.  *See* ECF No. 107-2 at 204.  Defendants' subjective belief that they had no other option but to agree to Plaintiffs' terms for reinstatement, without any evidence of wrongdoing, does not provide sufficient justification to invalidate the parties' contractual agreements.

In short, no factual support exists for the allegation that the agreements were coerced or fraudulently procured.  In rebutting Plaintiffs' breach-of-contract claims, Defendants have failed to make a sufficient showing that a genuine issue for trial exists.  The undisputed facts demonstrate that the parties entered into several valid contractual agreements and that Defendants defaulted by failing to satisfy their payment obligations.  Plaintiffs have thus made a clear showing that Defendants breached the contracts at hand.  In raising defenses, Defendants bore the burden to produce evidence sufficient to preclude summary judgment.  In this regard, "the evidence presented cannot consist of conclusory allegations," and "a mere scintilla of evidence" supporting Defendants' position will not suffice.  *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1988)); *Brooks v. Cnty. Com'n of Jefferson Cnty.*, 446 F.3d 1160, 1162 (11th Cir. 2006) (citation omitted).  Defendants' conclusory assertions that they were

coerced or fraudulently induced to execute the agreements are unsupported—and ultimately refuted— by the record.  As a result, Defendants have failed to meet their burden with respect to this claim.

### 2.  Excuse From Performance and Waiver

Defendants contend that they are not in breach of the agreements because Plaintiffs have failed to provide them with deductible invoices for the monies owed.  Defendants urge that they cannot be in breach for failing to pay amounts that were never invoiced.  Thus, they aver, Plaintiffs are in fact the parties in breach of the agreements.

While Defendants correctly point out that parties who prevent performance of a contract cannot take advantage of their own wrongdoing, that is not the case here.  Significantly, Defendants complain only of not receiving invoices after October 2012—two months after the cancellation of the policies and over one month after the filing of this lawsuit.  Defendants do not dispute having received an invoice for July 2012, the non-payment of which resulted in Plaintiffs' cancellation of the insurance program.  And, while Plaintiffs dispute the fact that Defendants were not sent invoices during the contested time period, this fact is irrelevant to whether Defendants were initially in breach.

Defendants rely on *L&H Construction Co. v. Circle Redmont, Inc.*, 55 So. 2d 630 (Fla. 5th DCA 2011), for the proposition that a party cannot establish breach of contract where the party failed to invoice the defendant for the amount allegedly due.  The *Redmont* court determined that insufficient evidence supported the trial court's conclusion that the defendant was in breach because the defendant was not invoiced for the month that the alleged breach occurred, and factual uncertainty existed as to whether some delay hindered performance.  55 So. 3d at 636.  The present

-14-

case is sufficiently distinguishable, however, as the record shows clearly that Defendants were invoiced for the July 2012 payment and that Defendants subsequently stopped payment for that month.  As of that point, Defendants were in default of the agreements, and Plaintiffs terminated the policies.  Whether Plaintiffs thereafter failed to invoice Defendants is immaterial, as Defendants were already in breach of the agreements as a result of their failure to pay.  While the invoices may be relevant to the damages that Plaintiffs seek to recover, they have no bearing on whether Defendants breached the agreements in the first place.  Plaintiffs' breach-of-contract claims are thus not precluded by this argument.

Defendants' assertion that Plaintiffs' acceptance of late payments during the policy period constituted a waiver is similarly flawed.  Defendants maintain that Plaintiffs waived their right to declare Defendants in default since Plaintiffs had previously accepted untimely payments.  But the program agreement contains an explicit non-waiver clause, which provides that any failure to enforce a provision of the agreement shall not be construed as a waiver of any rights or privileges and that the terms of the agreement may be strictly enforced at any time.  *See* ECF No. 106-4 at 8.

Florida courts "have consistently enforced [anti-waiver] clauses." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1182 (11th Cir. 2010) (alteration in original) (quoting *Nat'l Home Cmtys., LLC v. Friends of Sunshine Key, Inc.*, 874 So. 2d 631, 634 (Fla. 3d DCA 2004)) (internal quotation marks omitted).  As a result, a waiver defense is defeated as a matter of law by the anti-waiver provision of a contract.  *Nat'l Home Cmtys., LLC*, 874 So. 2d at 634 (alterations in original) (quoting *Rybovich Boat Works, Inc. v. Atkins*, 587 So. 2d 519, 522 (Fla. 4th DCA 1991)) (internal quotation marks omitted); *see also MCA Television Ltd. v. Public Interest Corp.*, 171 F.3d 1265, 1270-71 (11th Cir. 1999) (holding that notwithstanding licensor's

previous acceptance of late payments, anti-waiver provision of licensing contract was enforceable under Florida law and licensee was in breach of contract).  Because the program agreement's anti-waiver clause is valid under Florida law, Defendants are precluded from asserting that Plaintiffs waived their contractual right to declare Defendants in default.

### 3. Damages

Finally, Defendants contest the entry of summary judgment on the breach-of-contract claims because Defendants contend that factual disputes remain as to the amount of damages.  In particular, Defendants assert that the value of the collateral in Plaintiffs' possession has not yet been established.  This fact, however, does not preclude summary judgment on the issue of Defendants' liability.  *See AmeriPath, Inc. v. Wetherington*, No. 10-60766-CIV, 2011 WL 1303804, at *5 (S.D. Fla Apr. 4, 2011) ("Conflicting evidence as to amount of damages does not raise a genuine issue as to liability").  Thus, while the Court agrees that the amount of damages and the amount of potential set-off with respect to the collateral has not yet been conclusively proven, Plaintiffs have established that they are entitled to at least some measure of damages.  This is sufficient to award summary judgment as to liability.  *See id.* ("A plaintiff moving for summary judgment as to liability only does not need to prove the specific amount of damages to prevail.").

Thus, the Court grants summary judgment in favor of Plaintiffs on Counts I, III, and IV of the Complaint.  Because summary judgment on these counts necessarily negates Counts II and III of Defendants' Amended Counterclaim, summary judgment is also granted in favor of Plaintiffs on those claims.

### B. Foreclosure of Security Interest (Count VIII of the Complaint)

Plaintiffs also request that the Court grant summary judgment on their claim to foreclose their security interest in the collateral underlying Defendants' debt.  The parties executed two security agreements, which secured Defendants' obligations under each promissory note.  The agreements grant Plaintiffs a security interest in certain enumerated collateral, including all of Brand's personal property and fixtures.  *See* ECF No. 106-6 at 7.  Upon default, the security agreements state, among other things, that Guarantee may declare immediately due and payable all or any remaining indebtedness and appropriate the collateral and apply the proceeds towards repayment of the outstanding obligation.  *Id.* at 4.  Moreover, section 679.601(a)(1), Fla. Stats., permits a secured party, after default, to enforce a security interest by any available judicial procedure, including foreclosure.  By their own admission, Defendants stopped making payments to Plaintiffs in July 2012, resulting in default.  As a result, Plaintiffs are entitled to enforce the terms of the security agreements and promissory notes.

Defendants argue that Plaintiffs do not have the right to foreclose their security interest because Plaintiffs have not yet disposed of the collateral in their possession.  Under Florida's Uniform Commercial Code, a secured party is permitted to proceed against the collateral, or it may ignore the collateral and sue directly on the overdue note.  *Ayares-Eisenberg Perrine Datsun, Inc. v. Sun Bank of Miami*, 455 So. 2d 525, 526 (Fla. 3d DCA 1984) (citing Fla. Stat. § 679.501(1)).  The Code's default remedies are not mutually exclusive.  Therefore, "[b]y electing one remedy, a creditor is not thereby precluded from pursuing other available remedies."  *Id.* at 527.  Nonetheless, Florida courts have held that once a secured party has chosen a remedy, it must pursue that remedy to fruition, and only then may it pursue satisfaction of the debt by another method.  *See id.*; *City Fed.*

*Sav. Bank v. Fla. E. Dev. & Mgmt. Corp.*, 536 So. 2d 1057, 1058 (Fla. 4th DCA 1988) (per curiam) ("[A]t some point the secured creditor must choose which remedy he will utilize, and pursue that route to fruition."); *Land v. Cessna Aircraft Co.*, 466 So. 2d 1265, 1268 (Fla. 1st DCA 1985). Thus, once a creditor has repossessed collateral in satisfaction of a debt, it may not recover on the underlying note until it has disposed of the collateral in its possession. *See Ayares-Eisenberg,* 455 So. 2d at 527.

The Court agrees with Defendants that Plaintiffs must first deplete any collateral in their possession prior to seeking to compensate for any deficiency. The Court disagrees, however, with Defendants' contention that Plaintiffs' claim to foreclose the security interest is therefore precluded. The very objective of Plaintiffs' foreclosure claim is to proceed against the collateral in at least partial satisfaction of Defendants' obligation. As Plaintiffs have appropriately elected to first foreclose their security interest, Defendants' argument on this point is immaterial.

Defendants also contend that Plaintiffs have waived their right to foreclose by virtue of their acceptance of late payments. As discussed above, this argument is without merit, as the agreements contain express anti-waiver provisions, and Defendants have not demonstrated that those provisions are invalid.

Accordingly, the Court grants summary judgment in favor of Plaintiffs on Count VIII of the Complaint. Plaintiffs are entitled to foreclose their security interest in accordance with the terms of the security agreements and with Florida's Uniform Commercial Code.

### C. Breach of Contract (Count I of Defendants' Amended Counterclaim)

In Count I of the Amended Counterclaim, Defendants contend that Plaintiffs breached the insurance agreement because Plaintiffs allegedly failed to provide quarterly claims reviews, failed

to conduct collateral reviews, and wrongfully over-billed on charges for claims expenses.  Plaintiffs counter, however, that the policies do not require Plaintiffs to provide quarterly claims or collateral reviews and that the fees that Defendants dispute were charged as set forth in the policies.

Rule 56, Fed. R. Civ. P., "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial, and where the nonmoving party has failed to make a sufficient showing on an essential element of its case, the moving party is entitled to judgment as a matter of law. *Id.*

Here, although the parties dispute the frequency with which Plaintiffs conducted claims reviews, Defendants have not demonstrated that reviews as Defendants allege were required under the policy.  Indeed, having reviewed the agreements, the Court has come across no provision that mandates the reviews at issue.  Nor have Defendants made any showing that they were improperly billed.  In their opposition to Plaintiffs' motion, Defendants merely state that Plaintiffs "abused their position of trust in charging Defendants for containment fees" and that Plaintiffs imposed charges without justification.  ECF No. 186 at 7.  Conspicuously absent from Defendants' filings, however, is evidence in support of these claims.  Nor is the Court aware of any such evidence anywhere in the record.  Conclusory assertions without specific supporting facts have no probative value and are insufficient to create a genuine issue of fact. *See Morefield v. Brewton*, 442 F. App'x 425, 426 (11th Cir. 2011).  Defendants must offer more than allegations to overcome summary judgment. *Sun v.*

*Girardot*, 237 F. App'x 415, 417 (11th Cir. 2007).  For this reason, the Court grants summary judgment in favor of Plaintiffs on Count I of Defendants' Amended Counterclaim.

### D. Action for Accounting (Count IV of Defendants' Amended Counterclaim)

Plaintiffs also move for summary judgment on Count IV of Defendants' Amended Counterclaim, which asserts a claim for equitable accounting.  Under Florida law, a party seeking an equitable accounting must demonstrate that (1) the parties share a fiduciary relationship or that the questioned transactions are complex, and (2) the remedy at law is inadequate.  *Kee v. Nat'l Reserve Life Ins. Co.*, 918 F.2d 1538, 1541 (11th Cir. 1990) (citing *Parliament Ins. Co. v. Hanson*, 676 F.2d 1069, 1072 (5th Cir. Unit B 1982)).  An equitable accounting is not a substitute for discovery available and permitted under the Federal Rules of Civil Procedure.  *Cont'l Cas. Co. v. First Fin. Employee Leasing, Inc.*, 716 F. Supp. 2d 1176, 1195 (M.D. Fla. 2010); *Managed Care Solutions, Inc. v. Essent Healthcare, Inc.*, 694 F. Supp. 2d 1275, 1281 (S.D. Fla. 2010) ("Where a party [has] the opportunity to establish their damage claim through discovery, a request for accounting is not appropriate" (citation and internal quotation marks omitted)); *Zaki Kulaibee Establishment v. McFlicker*, 788 F. Supp. 2d 1363, 1371 (S.D. Fla. 2011) (holding that claim for equitable accounting was inappropriate where party could obtain documents through discovery).

Here, Defendants seek an accounting because they contest the damages at issue and the amount of money that Plaintiffs appropriated as collateral.  Specifically, Defendants state that they want a full accounting of the payments made to Guarantee during the policy period and the manner in which those funds were applied.  *See* ECF No. 91 at ¶¶ 54, 56.  Nothing in the record suggests that Defendants could not obtain the documents they seek through discovery.  Thus, Defendants'

-20-

equitable-accounting claim is inappropriate in this instance, and summary judgment is granted in favor of Plaintiffs on Count IV of the Amended Counterclaim.

### E. Unjust Enrichment (Count V of Defendants' Amended Counterclaim)

Count V of Defendants' Counterclaim asserts a claim for unjust enrichment and restitution from monies had and received. A claim for money had and received is the common-law equivalent of a modern claim for unjust enrichment. *See Spencer v. Wachovia Bank, N.A.*, No. 05-81016CIV, 2006 WL 3408043, at *8 (S.D. Fla. May 10, 2006) ("In Florida, causes of action for money had and received and unjust enrichment are virtually interchangeable. Unjust enrichment is the modern version of the common law action for money had and received."); *see also Hall v. Humana Hosp. Daytona Beach*, 686 So. 2d 653, 656 (Fla. 5th DCA 1996). Thus, the Court treats this count as asserting only one cause of action for unjust enrichment. A claim for unjust enrichment is an "equitable claim, based on a legal fiction created by courts to imply a 'contract' as a mater of law." *Tooltrend, Inc. v. CMT Utensili, SRL*, 198 F.3d 802, 805 (11th Cir. 1999). Because unjust enrichment is a claim in quasi-contract, the existence of an express contract necessarily negates the claim. *See Diamond "S" Dev. Corp. v. Mercantile Bank*, 989 So. 2d 696. 697 (Fla. 1st DCA 2008) ("[A] plaintiff cannot pursue a quasi-contract claim for unjust enrichment if an express contract exists concerning the same subject matter."); *ThuderWave, Inc. v. Carnival Corp.*, 954 F. Supp. 1562, 1566 (S.D. Fla. 1997) ("[U]pon a showing that an express contract exists, [a] quasi-contract claim fails.").

Here, Defendants claim that Plaintiffs were unjustly enriched because Plaintiffs allegedly charged exorbitant and excessive fees. But the fees that Defendants dispute arose from the claims administration costs, which are expressly outlined in the parties' agreement. Indeed, in their

response brief, Defendants state that "Plaintiffs do not demonstrate that the fees charged by them were inconsistent *with the terms of the Policies*."  ECF No. 186 at 9 (emphasis added).  Because Defendants challenge Plaintiffs' compliance with a provision of the contract, no claim for unjust enrichment lies.  The subject matter of Defendants' claim arises from the parties' express contractual agreement, so the unjust enrichment claim fails as a matter of law.  The Court therefore grants summary judgment in favor of Plaintiffs with respect to Count V of the Amended Counterclaim.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' Motion for Partial Summary Judgment [ECF No. 105] and Plaintiffs' Motion for Summary Judgment on Defendants' Amended Counterclaim [ECF No. 171].  Summary judgment is granted in favor of Plaintiffs on Counts I, III, IV, and VIII of the Complaint.  Summary judgment is also granted in favor of Plaintiffs on Defendants' Amended Counterclaim.

**DONE AND ORDERED** in Fort Lauderdale, Florida this 20th day of December 2013.

ROBIN S. ROSENBAUM
UNITED STATES DISTRICT JUDGE

Copies to:
The Honorable Patrick M. Hunt
Counsel of record