UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
BROWARD DIVISION

GUARANTEE INSURANCE COMPANY, PATRIOT NATIONAL INSURANCE GROUP, and PATRIOT UNDERWRITERS, INC.

CASE NO.: 12-CV-61670

Plaintiffs,

vs.

BRAND MANAGEMENT SERVICE INC. a/k/a BRAND MANAGMENT SERVICE and HERSHEL WEBER a/k/a HERSCHEL WEBER a/k/a HERSHAL WEBER a/k/a HAROLD WEBER,

Defendants.
_______________________________________/

**PLAINTIFFS' MOTION TO COMPEL BETTER RESPONSES TO FIRST SET OF INTERROGATORIES AND INCORPORATED MEMORANDUM OF LAW**

The Plaintiffs, GUARANTEE INSURANCE COMPANY, PATRIOT NATIONAL INSURANCE GROUP and PATRIOT UNDERWRITERS, INC., move this Court for the entry of an Order compelling the Defendant, BRAND MANAGEMENT SERVICES, INC. ("Brand"), to provide better answers to Plaintiffs' Interrogatories, and state as follows:

**INTRODUCTION**

Brand's **unverified** responses to Plaintiffs' Interrogatories are wholly deficient. Many of the responses are so vague that they essentially are non-responsive. Worse still, in the responses, Brand fails to even acknowledge or address certain portions of the Interrogatories. In some instances, Brand refers to documents but does not provide any specificity, in further violation of the Federal Rules of Civil Procedure and Local Rules. Finally, instead of verifying the responses, Brand added at the end of the Interrogatories a provision stating: "Brand reserves its

right to amend, supplement, change or modify any or all of its responses set forth herein at any time up to and including the end of the trial in this case." That provision, by itself, makes Brand's responses to Plaintiffs' Interrogatories wholly unreliable and meaningless.

## PROCEDURAL BACKGROUND

1. Prior to 2009, Brand held worker's compensation coverage with Oriska Insurance Company ("Oriska").

2. After those worker's compensation policies were cancelled, in or around September 2009, Patriot issued Workers' Compensation and Employers Liability Insurance Policies (the "Policies") to Brand. The Policies were provided in accordance with the parties' initial Letter of Intent in 2009 and subsequent Large Deductible Insurance Program Agreements (the "Program Agreements"), and were renewed.

3. After Brand's delinquent payments resulted in defaults, on January 20, 2012 and February 17, 2012, Promissory Notes, Guaranty Agreements, Security Agreements and an Addendum were entered into with Plaintiffs wherein Defendants promised to pay the monies owed, to bring all accounts current and to secure loan payments due on deductible installments, collateral installments and premium payments. *See, e.g.,* Security Agreements [D.E. 1-6].

4. The Security Agreements guarantee all of Defendants' personal property, whether tangible or intangible. *Id*.

5. In the Security Agreements, Brand Defendants warranted that all Collateral and Proceeds were "genuine, free from liens (except as set forth on Exhibit B), adverse claims, setoffs, default, prepayment, defenses and conditions precedent of any kind and character." *Id*., at ¶5. Defendants further agreed, among other things, not to permit any lien on the Collateral or

Proceeds other than in favor of Guarantee, except under certain circumstances that are not relevant here. *Id.*, at ¶6.

6. Defendants proceeded to default under the agreements resulting in the permanent cancellation of the Policies, effective August 4, 2012.

7. Defendants currently owe Plaintiffs over $9 million in damages.

**First Complaint and Oriska Documents**

8. On August 24, 2012, Plaintiffs filed a Complaint against Defendants seeking the recovery of damages for breach of contract, unjust enrichment, breach of promissory notes, breach of guarantees, foreclosure of security interest, alter ego liability, injunctive relief and for an accounting. [D.E. 1]. The Program Agreements, Promissory Notes, Guaranty Agreements, Security Agreements and Addendum underlie the causes of action asserted in the Complaint.

9. On July 27, 2012, and in connection with Plaintiffs' Motion for Preliminary Injunction [D.E. 4&16], Defendants filed Certificates of Insurance purportedly issued by Oriska Insurance Company ("Oriska"). [D.E. 32] Among other things, those Certificates called into question whether Defendants pledged the same collateral to Oriska that they previously had pledged to secure the Security Agreements.

10. While Plaintiffs then sought documents from Defendants related to their relationship and agreements with Oriska, Plaintiffs also pursued similar discovery from Oriska.

11. Specifically, on January 14, 2013, in an effort to obtain the documents it needs from Oriska, Plaintiffs served a subpoena on Oriska. The document requests were directed at

issues concerning when the alleged insurance through Oriska became effective, the scope of that insurance coverage and the collateral the Brand Defendants guaranteed to secure that coverage.

12. Ultimately, on August 27, 2013, Plaintiffs filed a Motion to Enforce Subpoena and Compel Production from Oriska in the United States District Court for the Northern District of New York.

13. The United States District Court for the Northern District of New York transferred the matter to the United States District Court for the Southern District of Florida for determination. On October 29, 2013, this Court entered an Order granting the Motion to Enforce, requiring Oriska to serve responsive documents and a privilege log by November 1, 2013. The Order required Oriska to produce Oriska's contracts, policies and written agreements with Brand Defendants and Weber for the worker's compensation insurance provided to Brand's PEO and employer members, along with all promissory notes, collateral and security agreements, as well as applications for insurance, from 2012 to the present. *Id*.

14. In November 2013, Oriska produced documents that revealed it entered into prior security agreements with Defendants covering the same collateral as the collateral pledged to Plaintiffs in the January/February 2012 security agreements. Those Oriska security agreements showed that Defendants gave Oriska security, including security in the form of assets held by Citibank, to secure the credit risk on reimbursement of deductible recoverables. Those assets included accounts belonging to Weber (the “Weber Accounts”).

15. The agreements further indicate that, in 2009, 2010 and 2011 (*i.e.*, while Defendants were insured by Plaintiffs), Weber gave Oriska a "first lien", in the form of a security

interest, in accounts at Citibank, N.A. owned by Weber. Those security agreements were intended to secure the reimbursement of the deductible recoverables in the worker's compensation and employer liability insurance policies previously issued by Oriska to Brand.

16. None of the security agreements have been released or satisfied between Oriska and Defendants.

**Amended Complaint**

17. As a result of discovering that Defendants misrepresented that the subject collateral pledged to Plaintiffs was reportedly encumbered by virtue of the Oriska security agreements, Plaintiffs moved to amend the complaint.

18. In the Amended Complaint, Plaintiffs allege claims for Breach of the Security Agreements (Count IX), Fraudulent Inducement into the Agreements (Count X), Negligent Misrepresentation into the Agreements (Count XI), Fraudulent Inducement into Promissory Notes, Security Agreements, Guarantee Agreements and Renewal Policies (Count XII), and Negligent Misrepresentation into Promissory Notes, Security Agreements, Guarantee Agreements and Renewal Policies (Count XIII).

19. In moving to amend the Complaint, Plaintiffs requested additional, and limited discovery, concerning Oriska's interests in the security and the agreements Oriska produced as well as discovery from Defendants regarding the fraudulent nature of the representations made by Defendants to Plaintiffs.

**Summary Judgment Order and Order Permitting Limited Discovery**

20. On December 20, 2013, the Court granted Plaintiffs' Partial Summary Judgment [Doc. #220] on the claims for breach of contract (Count I), breach of promissory notes (Count III), breach of guaranty agreements (Count IV) and foreclosure of security interest (Count VIII). The Court also granted summary judgment to Plaintiffs on Defendants' Amended Counterclaim. The remaining counts from the first complaint are for an accounting and injunctive relief, which center around the collateral/assets in which Plaintiffs were given security interests upon, and for alter ego.

21. On January 8, 2014, the Court granted Plaintiffs' Motion to Amend the Complaint (Doc. #241) wherein it stated that "[t]he parties will be permitted to conduct limited discovery solely with respect to the new claims asserted in the Complaint".

**Plaintiffs' February 2014 Discovery**

22. On February 19, 2014, Plaintiffs served their First Set of Interrogatories on Brand. The Interrogatories are attached hereto as Exhibit A.

23. On March 31, 2014, Brand served unverified responses to Plaintiffs' Interrogatories. As further set forth below, those responses to Interrogatories are insufficient and do not even address many of the portions of the questions therein. The Responses are attached hereto as Exhibit B.

**BRAND'S RESPONSES TO PLAINTIFFS' INTERROGATORIES**

I. Brand's Interrogatory Responses Are Not Verified

Rule 33 of the Federal Rules of Civil Procedure provides that "Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath."

Fed.R.Civ.P. 33(b)(3). In violation of that requirement, Brand did not serve verified responses to the Interrogatories and has not made any effort to serve verified responses to this date.

II. Brand's Interrogatory Responses Are Incomplete

Pursuant to Local Rule 26.1(g), no part of an interrogatory shall be left unanswered merely because an objection is interposed to another part of the interrogatory. S.D.Fla.L.R. 26.1(g). That provision makes clear that the Southern District of Florida commands a full and complete response to Interrogatories. Nevertheless, in this case, as more fully set forth below, Brand left unanswered parts of several Interrogatories, even in instances where it did not assert an objection. Indeed, Brand simply ignored parts of the Interrogatories and insufficiently responded to the parts to which it did respond. At the same time, in certain instances, Brand referred to documents for the responsive information, without providing any specific information concerning those documents. In doing so, Brand violated Local Rule 26.1, which provides that:

> (4) Whenever a party answers any interrogatory by reference to records from which the answer may be derived or ascertained, as permitted in Federal Rule of Civil Procedure 33(d):
> (A) The specification of business records and materials to be produced shall be in sufficient detail to permit the interrogating party to locate and identify the records and to ascertain the answer as readily as could the party from whom discovery is sought.

S.D.Fla.L.R. 26.1. Brand's responses are incomplete as set forth below.

Finally, at the end of the responses, Brand stated: "Brand reserves its right to amend, supplement, change or modify any or all of its responses set forth herein at any time up to and including the end of the trial in this case." That statement should be stricken from Brand's

responses, as it directly violates the intent of Rule 30 that parties receive complete and adequate responses that they can rely upon in discovery.

A. Interrogatory No. 1

**Interrogatory**

As to your allegation in the Tenth Affirmative Defenses to the Amended Complaint that Plaintiffs knew or reasonably should have known that the Collateral and Proceeds were encumbered, please state the following:

(a) All facts on which you rely in support of the allegation;

(b) The names, addresses and telephone numbers of all persons allegedly having knowledge of the facts on which you rely in support of the allegation; and

(c) Identify all documents that you contend support that allegation.

**Response**

Brand Management Service, Inc. a/k/a Brand Management Service ("Brand") through an insurance broker or agent (the "Broker") to whom Brand was referred and or directed by Guarantee, made application to Guarantee for a large deductible policy of Workers' Compensation insurance. In connection with that application it is Brand's understanding that Guarantee required the submission to it of a voluminous number of documents and information pertaining to Brand, its organization, business, financial condition, its assets and liabilities and many other pertinent facts. Brand supplied all information and documents which were requested of it by the Broker and Brand understood that all of those documents and information were submitted to Guarantee by the Broker. Brand also understood that Guarantee conducted its own

due diligence and before agreeing to issue the said Workers' Compensation insurance policy or policies that Guarantee conducted a full and intensive due diligence study and analysis of Brand. Since all of the communications were between Brand and the Broker, Brand does not know the names, addresses and telephone numbers of the persons who held these discussions and nor specifically which documents were provided by the Broker to Guarantee except that Brand believes those persons to be officers, directors and/or employees of the Broker. In addition upon information and belief the underwriting files maintained by Guarantee contains documents which support these allegations.

**Basis to Compel Better Response**

Brand's response to Interrogatory No. 1 is incomplete in that it does not provide the requested information. Although Brand claims not to have certain of the information, it does not even provide the information it obviously would have, including that it does not identify the name, address and telephone number of the person at Brand who gave the documents and information it allegedly gave to the broker and does not identify the name, address and telephone number of the broker that allegedly received the documents or information. It also did not identify which documents Brand allegedly gave its broker to deliver to Plaintiffs. Finally, Brand does not contend in any manner that it attempted to obtain from its broker any of the information responsive to Interrogatory No. 1 which purportedly is not in its possession. The information requested is directly relevant to the allegations in the Amended Complaint and Brand's defenses to those allegations, and Brand does not contend otherwise.

B. Interrogatory No. 2

**Interrogatory**

As to your allegation in the Seventh Affirmative Defense to the Amended Complaint that Plaintiffs continue to hold collateral in their possession, custody or control, please state the following:

(a) The amount of collateral that you claim Plaintiffs hold in their possession, custody or control and show all calculations you used in arriving at that amount;

(b) All facts on which you rely in support of the allegation;

(c) The names, addresses and telephone numbers of all persons allegedly having knowledge of the facts on which you rely in support of the allegation; and

(d) Identify all documents that you contend support that allegation.

**Response**

During the course of the term of the policy or policies of Workers' Compensation insurance issued by Guarantee to or for the benefit of Brand, Brand received and paid invoices submitted to it by Brand which included monies to be held by Guarantee as collateral for payment of monies becoming due and owing to Guarantee from Brand. Brand does not know the names, addresses, Brand does not know the names, addresses and telephone numbers of the persons at Guarantee who prepared these invoices and/or who received and recorded the payments with respect to the collateral except that Brand believes those persons to be officers, directors and/or employees of Guarantee. The persons at Brand who would have knowledge of these facts are Harold Weber, Jacob Rosenberg and/or Molly Cohen. The documents which Brand believes support these allegations are the Policies and all amendments and documents collateral thereto, the invoices

received from Guarantee, the checks or other instruments of payment from Brand to Guarantee and the financial books and records of Guarantee. In addition upon information and belief the underwriting files maintained by Guarantee contains documents which support these allegations.

**Basis to Compel Better Response**

Brand did not fully address the question, in that it did not state what leads it to believe that Plaintiffs continue to hold collateral in their possession, custody or control. Instead, it merely states a basis for contending that at one time Plaintiffs held collateral. Brand also did not respond to Plaintiffs' request that it state the amount of collateral that it claims Plaintiffs hold in their possession. As a result, Brand's "response" merely avoids the question rather than answers it. Even encompassed within the response it provided, the response does not fully address the subsections of Plaintiffs' Interrogatories. Specifically, its response to subsection (c) is not informative, in that it merely states that Harold Weber, Jacob Rosenberg **and/or** Molly Cohen would have the information, rather than stating the name of the person who actually has the information. Since each of those persons are employees or agents of Brand, the information is in Brand's possession. Significantly, Brand did not object in any way to the Interrogatory, as the Interrogatory seeks information relevant to the claims at issue.

C. Interrogatory No. 3

**Interrogatory**

Please list each type of collateral that secured a debt incurred by Brand from January 2009 through December 2012 and, as to each type of collateral, state:

(a) Who pledged the collateral and to whom the collateral was pledged;

(b) The amount and type of debt the collateral secured; and

(c) When the collateral was released.

**Response**

All collateral as referred to in Exhibit A to that certain Security Agreement dated January 20, 2012 by and between Guaranty and Brand, a copy of which is annexed to the Amended Complaint.

Brand does not know of any release of the collateral.

All collateral invoiced to Brand by Guarantee and deposited with Guarantee by Brand which deposits were made during the term of the Policy. Brand does not know of any release of the collateral.

**Basis to Compel Better Response**

Brand's response is obviously incomplete when referring to the responses to other interrogatories, including Interrogatory No. 10. For instance, in Interrogatory No. 10, Brand states that it pledged collateral to Oriska and refers to the agreements. Documents Brand has produced in this litigation evidences that Brand incurred debts to Oriska in 2009 and following, and Oriska has made clear in discovery that it has collateral agreements that are intended to secure those debts. Nevertheless, Brand did not even list Oriska in response to Interrogatory No. 3, let alone provide the other information requested. Its failure to do so calls into question what other information it may be omitting. Interrogatory No. 3 certainly is not limited to only debts incurred by Brand from Plaintiffs, although it appears that Brand seeks to so limit it by only responding to the extent that it incurred debts with Plaintiffs.

D. Interrogatory No. 4

**Interrogatory**

Please list each agreement that was in effect at any time from January 2009 through December 2012 in which Brand pledged collateral and, as to each agreement, state:

(a) The names, addresses and telephone numbers of all persons who were parties to the agreement;

(b) The dates in which the agreement was in effect;

(c) The type of collateral pledged, including the name and account numbers of any bank accounts; and

(d) The names, addresses and telephone numbers of all persons who have knowledge of the facts surrounding the agreement.

**Response**

See response to Interrogatory 3.

**Basis to Compel Better Response**

For the same reasons that the response to Interrogatory No. 3 is incomplete, the response to Interrogatory No. 4 is equally incomplete. Indeed, although Oriska contends that Brand's agreements with it were in effect at all times and continue to be effective now, Brand did not identify those agreements in any way.

E. Interrogatory No. 5

**Interrogatory**

As to your denial of the allegation in Paragraph No. 42 of the Amended Complaint, please state

the following:

(a) All facts on which you rely in support of the denial; and

(b) The names, addresses and telephone numbers of all persons allegedly having knowledge of the facts on which you rely.

**Response**

The Defendants do not believe that they were parties to prior security agreements which covered the same collateral as that referred to in the Security Agreements with Guarantee.

**Basis to Compel Better Response**

Brand did not state the names, addresses and telephone numbers of the persons who allegedly have knowledge of the facts on which it relies. It also did not object to Interrogatory No. 5 or provide any reasoning for not providing that information.

F. Interrogatory No. 7

**Interrogatory**

As to your denial of the allegation in Paragraph No. 47 of the Amended Complaint, please state the following:

(a) All facts on which you rely in support of the denial; and

(b) The names, addresses and telephone numbers of all persons allegedly having knowledge of the facts on which you rely.

**Response**

Defendants do not believe that Oriska holds a lien on the same collateral as referred to in the agreements with Guarantee.

**Basis to Compel Better Response**

Brand did not state the names, addresses and telephone numbers of the persons who allegedly have knowledge of the facts on which it relies. It also did not object to Interrogatory No. 7 or provide any reasoning for not providing that information.

G. Interrogatory No. 8

**Interrogatory**

Please list each document Brand provided to Plaintiffs in order to secure credit from Plaintiffs in connection with the issuance of insurance to Brand and state the name, address and telephone number of each person who is in possession, custody or control of that document. If you are unable to identify the documents provided, please state the name, address and telephone number of the person or entity who can provide that information on behalf of Brand.

**Response**

See Response to Interrogatory Numbers 1 and 2 which is incorporated herein with the same force and effect as if set forth at length herein.

**Basis to Compel Better Response**

Plaintiff did not list any of the documents it purportedly provided to the broker to give to Plaintiffs. It also did not list any of the documents its broker provided or state that it even made an effort to determine that information. Although it evidently intends to rely on its contention that it is unable to identify the documents, it also did not state the name, address and telephone number of the person or entity who can provide that information on behalf of Brand. Finally, it did not make any effort to state the name, address and telephone number of any person in

possession of any document it delivered to Plaintiffs or to its broker to provide to Plaintiffs.

H. Interrogatory No. 9

**Interrogatory**

Please identify each and every person and entity that has extended any form of credit to Brand from 2009 to the present and state: (1) the name, address, and telephone number of each such person and entity; (2) the beginning and ending dates of the credit; and (3) a description of the purpose for the credit.

**Response**

a. Guarantee

b. Oriska

Guarantee and Oriska extended credit to Brand in connection with their respective issuance of policies of insurance to or for the benefit of Oriska.

c. Sentry Insurance a Mutual Company ("Sentry") extended credit to Brand in connection with its ongoing payment of workers' compensation insurance claims under one or more policies of workers' compensation insurance which Sentry issued to or for the benefit of Brand prior to the issuance of the insurance policies by Guarantee.

d. Professionals such as Avrom R. Vann, P.C. and Jacob Rosenfeld in connection with the provision of professional services to or for the benefit of Brand.

e. Weber and/or one or more of the Weber Entities which may have made loans to Brand which were used to pay operating expenses of Brand.

**Basis to Compel Better Response**

Although Interrogatory No. 9 is relevant to the Plaintiffs claims and Brand has not contended otherwise, it is obvious that Brand did not make any effort to provide a complete response. Indeed, instead of stating the name, address and telephone number of each entity it made statements such as "Professionals such as…" and "Weber **and/or** one or more of the Weber entities." Response to Interrogatory No. 9 (emphasis added). Those portions of the response in themselves show Brand's complete disregard for its discovery obligations. Setting that aside, Brand also did not state the beginning and ending dates of any of the credit that it bothered listing in response to Interrogatory No. 9. Finally, it made extremely vague descriptions of the purpose of the credit, such as "in connection with the provision of professional services to or for the benefit of Brand." At bottom, it is obvious that Brand made every effort to provide little to no useful information and completely disregarded its obligation to provide a full and complete response. It did so without providing even an objection to try to rely upon for its failure to provide the responsive information. Significantly, Plaintiffs requested the information in an effort to determine whether any other collateral agreements existed that would form further support for their claims. The information that Brand provided, however, does not afford Plaintiffs the opportunity to conduct any follow up discovery in furtherance of that information.

I. Interrogatory No. 10

**Interrogatory**

As to the each agreement Brand and/or Weber entered into with Oriska from 2009 to the present in which Brand and/or Weber guaranteed any collateral to Oriska, including but not limited to the agreements attached hereto as Exhibit A, please state:

(a) The factual basis for entering into the agreement, including what the agreement was intended to effectuate and why it was necessary to provide collateral;

(b) A description of the collateral that was pledged and the dates that collateral was pledged, including whether the collateral was ever released;

(c) The name, phone number and address of the person who negotiated the agreement on behalf of Brand and/or Weber; and

(d) The name, phone number and address of the person at Oriska who has the most knowledge of the factual basis for the agreement;

**Response**

(a) Oriska insisted upon the execution and delivery of such agreement and the provision of any collateral, if any, set forth in such agreement(s). The intent of each agreement is set forth within each such agreement.

(b) The collateral, if any, is as set forth in each such agreement.

(c) Brand did not negotiate any such agreement

(d) Unknown to Brand.

**Basis to Compel Better Response**

Brand did not explain what it means by saying that it did not negotiate any such agreement, including that it does not make clear whether anyone else did so on its behalf. Given its prior responses, that information is not otherwise clear. Moreover, it did not provide any information as to the identity of the person at Oriska who has knowledge of the agreements, such as the person who may have sent the agreement to Brand for its signature.

J. Interrogatory No. 11

**Interrogatory**

Please explain how the agreements attached hereto as Exhibit A apply to the current relationship between Brand and Oriska and state the name, date and parties to any agreement that gives continuing effect to any of the documents attached as Exhibit A.

**Response**

By the express terms of these agreements, Ashbi Management, Inc. has been substituted for Brand Management under these agreements and therefore Brand Management does not believe that these agreements have any continuing effect upon it and its current relationship with Oriska.

**Basis to Compel Better Response**

Brand indisputably has continuing insurance through Oriska and Oriska has stated that the relationship is governed by the agreements. Accordingly, it appears that Brand's response is disingenuous. Setting that aside, in the Interrogatories, "Brand" is defined to include "all related entities" and agents of Brand. It appears that, to the extent that Ashbi Management now is the party responsible under those agreements, it is in its capacity as a entity related to or acting as agent for Brand. Indeed, there is not other explanation for the fact that Ashbi Management would agree to provide collateral that would secure insurance issued for the benefit of Brand. As a result, it is obvious that Brand simply is making efforts to avoid providing any useful information instead of answering Interrogatory No. 11 in a direct manner, as it is obligated to do.

K. Interrogatory No. 14

**Interrogatory**

Please identify and describe in detail all accounts receivable that Brand owned from 2009 to the present and any assignee of such accounts receivable.

**Response**

Accounts receivable generated in the ordinary course of business. Copies of the invoices issued by Brand are available for inspection and copying in the offices of Brand on a date and time as mutually agreed to by counsel for Brand and counsel for Guarantee.

**Basis to Compel Better Response**

Brand has not specifically identified the documents that would be responsive and has not made those documents available to Plaintiffs to this date.

L. Interrogatory No. 15

**Interrogatory**

Please state the name of the institution, the account number, the account type, and the dates on which those accounts were open of Brand's checking, savings and other financial accounts from 2009 to the present.

**Response**

Brand objects to this Interrogatory as being outside of the permitted discovery with respect to the additional causes of action set forth in the Amended Complaint.

Brand has previously produced documents responsive to this Interrogatory and incorporates those prior documents in its answer to this Interrogatory.

**Basis to Compel Better Response**

Interrogatory No. 15 is relevant to the identity of the collateral that Brand may have used in

violation of the provisions of its agreements with Plaintiffs. As a result, it is within the permitted discovery since it is relevant to the Amended Complaint. Moreover, Brand's reference to unspecified documents that it purportedly has produced is not compliant with Brand's obligations on the Federal Rules of Civil Procedure and Local Rules, which require Brand to identify the referenced documents with specificity.

M. Interrogatory No. 16

**Interrogatory**

Please identify any and all United States, state and foreign income and other tax returns filed by Brand from 2009 to the present and identify who prepared each return.

**Response**

Brand objects to this Interrogatory as being outside of the permitted discovery with respect to the additional causes of action set forth in the Amended Complaint.

Without waiving this objection Brand has filed United States Income Tax Returns, and New York State and City income tax returns.

**Basis to Compel Better Response**

Interrogatory No. 16 is relevant to the identity of the collateral that Brand may have used in violation of the provisions of its agreements with Plaintiffs. As a result, it is within the permitted discovery since it is relevant to the Amended Complaint. Brand's response does not include the responsive information other than to vaguely state that it has filed certain tax returns. It does not specifically identify those documents in a way that Plaintiffs can search for them and does not state any information regarding who prepared the tax returns.

N. Interrogatory No. 17

**Interrogatory**

Please describe in detail any and all personal withdrawals of funds made by each officer, director, or managing executive of Brand from any accounts of Brand during the past twelve months.

**Response**

Brand objects to this Interrogatory as being outside of the permitted discovery with respect to the additional causes of action set forth in the Amended Complaint.

**Basis to Compel Better Response**

Interrogatory No. 17 is relevant to the identity of the collateral that Brand may have used in violation of the provisions of its agreements with Plaintiffs and what has become of that collateral in the recent year. As a result, it is within the permitted discovery since it is relevant to the Amended Complaint.

**CERTIFICATE OF SERVICE**

I hereby certify that, on February 19, 2014 I served a copy of the foregoing on counsel for Defendants via electronic mail.

George N. Tompkins, III
george.tompkinsIII@wilsonelser.com
WILSON ELSER MOSKOWITZ
EDELMAN & DICKER, LLP
*Attorneys for Plaintiffs*
150 East 42nd Street
New York, New York 10017
(212) 915-5562

- and -

**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
*Attorneys for Plaintiffs*
3800 Bank of America Tower
100 Southeast Second Street
Miami, Florida 33131
(305) 374-4400 Telephone
(305) 579-0261 Facsimile

By: */s/ Sherril M. Colombo*
Sherril M. Colombo
Florida Bar No. 948799
sherril.colombo@wilsonelser.com
Stefanie M. Mederos
Florida Bar No. 12041
stefanie.mederos@wilsonelser.com

## SERVICE LIST

**Counsel for Defendants**
Avrom R. Vann
A2442@aol.com
AVROM R. VANN, P.C.
420 Lexington Avenue – Suite 2806
New York, New York 10170-0002
Tel.: (212) 382-1700
Fax: (212) 661-6976
- and -
Stephen Rakusin
Stephen@rakusinlaw.com
THE RAKUSIN LAW FIRM
2919 E. Commercial Boulevard
Fort Lauderdale, Florida 33308

Tel.: (954) 356-0496
Fax: (954) 356-0416

**Counsel for Plaintiff**
Sherril M. Colombo
sherril.colombo@wilsonelser.com
Stefanie M. Mederos
stefanie.mederos@wilsonelser.com
WILSON ELSER MOSKOWITZ
EDELMAN & DICKER, LLP
3800 Bank of America Tower
100 Southeast Second Street
Miami, Florida 33131
Tel.: 305-374-4400
Fax: 305-579-0261